IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GREGORY SCRUGGS, JR., | ) | CASE NO. 1:20CV294 |
| | ) | |
| Petitioner, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| WARDEN DAVID GRAY, | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner Gregory Scruggs, Jr. ("Petitioner" or "Scruggs") brings this habeas corpus action pursuant to 28 U.S.C. § 2254.  Doc. 1.  Scruggs is detained at the Belmont Correctional Institution, having been found guilty by a Cuyahoga County, Ohio, Court of Common Pleas jury of one count of rape and having pleaded guilty to two subsequently amended counts of sexual battery.  *State v. Scruggs*, Case No. CR-18-628628-A (Cuyahoga Cty. Common Pleas Ct., filed Sept. 18, 2018).  At sentencing, the trial court sentenced Scruggs to 5 years for rape and 2 years on each count of sexual battery, to be served concurrently, for a total prison term of 5 years.  Doc. 9-1, p. 32.

On January 31, 2020, Scruggs filed his Petition for Writ of Habeas Corpus setting forth five grounds for relief.  Doc. 1, p. 13; Doc. 1-1, pp. 2-3.  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2. As set forth more fully below, Scruggs's grounds for relief are not cognizable, are procedurally defaulted, and/or fail on the merits.  Thus, the undersigned recommends that his Petition for Writ of Habeas Corpus (Doc. 1) be **DISMISSED in part and DENIED in part**.[1]

**I.  Background**

---

[1] The grounds in the petition that are procedurally defaulted and not cognizable results in a dismissal; the grounds in the petition that are addressed on the merits result in a denial.

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008).

The following summary of underlying facts is taken from the opinion of the Cuyahoga County Court of Appeals, Eighth Appellate District of Ohio:

{¶ 2} In January 2018, Scruggs was charged with four counts of rape, three counts of kidnapping, and one count attempted rape.[] The charges arose from separate incidents, involving three victims, and each was alleged to have occurred, approximately a year apart, between June 2015 and July 2017.

{¶ 3} In September 2018, the trial court granted Scruggs's motion to sever the counts pertaining to each victim. In the same month, a jury trial commenced on one count each of rape and kidnapping pertaining to victim T.M.

{¶ 4} At trial, 25-year-old T.M. testified that on July 23, 2017, she spent time with her best friend, Jamica, and her cousin, Van. They drove around, drank alcohol, and smoked marijuana. T.M. stated they bought a fifth of Hennessy and started drinking around noon. The three shared the alcohol as they drove around.

{¶ 5} T.M. testified that around 6:00 p.m., they stopped to visit her sister T.M.II. While visiting her sister, T.M. exchanged text messages with a man named Maurice Bryant ("Bryant"), whom she had met several weeks earlier. Bryant indicated he would pick her up from her sister's house, so they could spend time together.

{¶ 6} Bryant arrived at T.M.II's house around 7:00 p.m. Bryant was accompanied by another man, who was later identified as Scruggs. T.M. and Jamica entered Bryant's car and the four began driving around. Bryant and Scruggs were drinking alcohol and offered the women a drink, but they declined. T.M. testified she declined because she was already drunk, had been drinking dark liquor all day and Bryant and Scruggs were drinking light liquor.

{¶ 7} T.M. testified that after driving around for a while, and after Bryant made stops at several houses, they went to Scruggs's house. Once there, the four sat around watching television. At some point, T.M. left with Bryant to go to the liquor store. When they returned to Scruggs's house, they continued to watch television. T.M. testified that while they were watching television, she fell asleep on the couch next to Bryant and Jamica, who were already asleep.

{¶ 8} T.M. testified that at some point during the middle of the night, she awoke because she felt as if she was falling off the couch. T.M. stated the living room was dark, the

television had been turned off, her shorts and underwear were pulled down, and she felt someone inserting his penis into her vagina. T.M. stated she pushed him off, pulled up her shorts, and went back to sleep because she still felt drunk. T.M. testified that she was awakened a second time when someone inserted his penis into her vagina. T.M. stated she again pushed him off her and pulled up her shorts. T.M. stated that as she was trying to become fully awake, she observed Bryant coming through the front door. T.M. told Bryant she was ready to leave and he took her home.

{¶ 9} T.M. testified that she called T.M.II early the next morning and described what occurred and later went to the hospital where a rape kit was completed and where she indicated Bryant was the perpetrator. When T.M. reported the incidents to the police, she also indicated Bryant was the assailant.

{¶ 10} T.M. testified that she subsequently sent Bryant a text stating, "[i]f you wanted to have sex then you could have just asked me. And then I told him to lose my number, and he said he already did." T.M. testified that at the time she sent the text, she thought it was Bryant who had sexually assaulted her so she was surprised when the rape-kit results indicated it was Scruggs who had committed the sexual assault.

{¶ 11} T.M.'s older sister, T.M.II, testified that on July 23, 2017, T.M. and Jamica visited with her for a few hours. T.M.II stated her sister was drunk when she arrived, but that she continued drinking. T.M.II testified that Jamica was also drunk and fell asleep on the couch. T.M.II stated that someone in a dark-colored vehicle picked up her sister and Jamica. T.M.II testified that because she did not know the individual who picked up T.M., she communicated with her sister via text throughout the rest of the evening. T.M.II stated that the following morning, her sister contacted her and informed her of the sexual assault.

{¶ 12} Scruggs testified on his own behalf. Scruggs testified he and Bryant picked up T.M. and her friend between 6:30 and 7:00 p.m. on July 23, 2017. Scruggs stated that he and Bryant were drinking, offered the women a drink, but T.M. refused and informed them she would not drink light liquor because she had been drinking dark liquor. Scruggs stated they drove around for about an hour and then went to the house where he lived with his grandmother.

{¶ 13} Scruggs testified that while at his grandmother's house, they sat around watching a show called "Power," while T.M.'s friend slept on the couch. Scruggs stated T.M. left with Bryant and they returned about 45 minutes later. Scruggs stated that a short time later, Bryant left again.

{¶ 14} Scruggs testified that after Bryant left, he and T.M. began talking and flirting with each other. Scruggs stated that he and T.M. went into a room adjacent to the living room where they had consensual sex. Scruggs stated that T.M. asked if he had any money and he told her that he did. Scruggs stated they had sex in two different rooms. Scruggs testified that after they had sex, T.M. asked him not to tell Bryant and he told her he would not. After Bryant returned, he and Scruggs dropped T.M. and Jamica home.

{¶ 15} The jury found Scruggs guilty of rape, but not guilty of kidnapping. Thereafter, Scruggs pled guilty to two counts of sexual battery relating to victims D.A. and E.W. The trial court sentenced Scruggs to five years in prison for rape and to two years each for the sexual battery charges. The trial court ordered concurrent sentences for a total prison term of five years.

*State v. Scruggs*, 2019-Ohio-3043, 2019 WL 3410059, at \*1-2 (Oh. Ct. App. July 25, 2019).

### A. State Court Action

On May 14, 2018, a Cuyahoga County Grand Jury indicted Scruggs on four counts of rape, three counts of kidnapping, and one count of attempted rape. Doc. 9-1, pp. 4-8. All the counts had a sexually violent predator specification. Id. The charges resulted from three separate incidents, involved three victims, and each incident occurred approximately a year apart, between June 2015 and July 2017. Id. Scruggs, through counsel, pleaded not guilty on all counts. Doc. 9-1, p. 9.

On July 20, 2018, Scruggs, through counsel, filed a motion to sever the counts regarding each incident based upon prejudicial joinder, which the trial court granted. Doc. 9-1, pp. 10, 27. Scruggs was tried on counts one and two alleging rape and kidnapping against one victim in 2017 and was found guilty of rape (count 1) and not guilty kidnapping (count 2). Doc. 9-1, p. 28. Thereafter, the rape counts regarding the two other victims were amended to sexual battery without sexually violent predator specifications, Scruggs pleaded guilty to those counts, and the remaining counts were deleted. Doc. 9-1, p. 30. At sentencing, the trial court sentenced Scruggs to 5 years for rape and 2 years on each count of sexual battery, to be served concurrently, for a total prison term of 5 years. Doc. 9-1, p. 32.

### B. Direct Appeal

On October 31, 2018, Scruggs, through new counsel, filed an appeal in the Ohio Court of Appeals, Eighth District. Doc. 9-1, p. 34. He raised the following assignments of error:

1. The conviction for rape was against the manifest weight of the evidence.

2. The conviction for rape was not supported by sufficient evidence.

3. Scruggs was denied his right to the effective assistance of counsel, when counsel failed to subpoena and call witnesses to testify on Scruggs' behalf.

4. The trial court erred when it did not have a full plea colloquy on the sexual battery charges with Scruggs pausing to further explain the important rights he was waiving by pleading guilty.

Doc. 9-1, p. 45.  On July 25, 2019, the Ohio Court of Appeals affirmed the judgment of the trial court.  Doc. 9-1, pp. 80-93.

On August 21, 2019, Scruggs, pro se, filed an appeal to the Ohio Supreme Court.  Doc. 9-1, p. 94.  In his memorandum in support of jurisdiction, he asserted the following propositions of law:

I. APPELLANT'S CONVICTION IS CONTRARY TO LAW: His Sentence is contrary to law, and the Eighth Appellate District court made an unreasonable application of law against the United States Constitution of the Fifth, and, 14th Amendment, and had violated his Due Process of Law and Equal Protection when the conviction for rape was against the manifest weight of the evidence.

II. APPELLANT'S CONVICTION IS CONTRARY TO LAW: His Sentence is contrary to law, and the Eighth Appellate District court made an unreasonable application of law against the United States Constitution of the Fifth, 14th Amendment, and had violated his Due Process of Law and Equal Protection when the conviction for rape was not supported by substantial evidence.

III. APPELLANT'S CONVICTION IS CONTRARY TO LAW: His Sentence is contrary to law, and the Eighth Appellate District court made an unreasonable application of law against the United States Constitution of the Fifth, Sixth and, 14th Amendment, and had violated his Due Process of Law and Equal Protection when Scruggs was denied his right to the effective assistance of counsel, when counsel failed to subpoena and call witnesses to testify on Scruggs' behalf.

IV. APPELLANT'S CONVICTION IS CONTRARY TO LAW: His Sentence is contrary to law, and the Eighth Appellate District court made an unreasonable application of law against the United States Constitution of the Fifth, Sixth and, 14th Amendment, and had violated his Due Process of Law and Equal Protection when Scruggs was denied his right to the effective assistance of counsel, when the trial court erred when it did not have a full plea colloquy with Scruggs.

V. APPELLANT'S CONVICTION IS CONTRARY TO LAW: His Sentence is contrary

to law, and the Eighth Appellate District court made an unreasonable application of law against the United States Constitution of the Fifth, Sixth and, 14th Amendment, and had violated his Due Process of Law and Equal Protection when Scruggs was denied his right to the effective assistance of counsel, when the trial court erred when it did not have a full plea colloquy with Scruggs pausing to further explain the important rights he was waiving by pleading guilty to sexual battery

Doc. 9-1, pp. 108-109.  On November 12, 2019, the Ohio Supreme Court declined to accept

jurisdiction of the appeal pursuant to S.C.Prac.R. 7.08(B)(4).  Doc. 9-1, p. 127.

### C. Application to Reopen

On October 17, 2019, Scruggs, pro se, filed a "motion for reconsideration pursuant to

R.C. 26(B)(7)" in the Ohio Court of Appeals.  Doc. 9-1, p. 128.  He argued that he received

ineffective assistance of appellate counsel and raised the following assignments of error:

1. Appellant was denied effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution where his appellate counsel omitted a Dead Bang Winner, prejudicing appellant to receive a full review by the court.

2. Failure to investigate the case a violation against his Sixth Amendment right to the United States Constitution.

3. Failure to test the state's case where evidence showed that rape was not present this a Sixth Amendment violation against the United States Constitutional right.

4. Failure to present defense alibi, where if done so a viable defense would have merged and a different outcome would have so, where witnesses would have showed that the asserted victim was not drunk, and the sex would have proved to be consensual, present this a Sixth Amendment violation against the United States Constitutional right. And a violation of a Due Process right to establish a fair trial and or a fair proceeding.

Doc. 9-1, pp. 132, 134-5.  On February 18, 2020, the Ohio Court of Appeals construed Scruggs's

motion as a timely Application to Reopen under Ohio App. R. 26(B) and denied it.  Doc. 9-1, pp.

163-169.  Scruggs did not appeal that decision.

### D. Federal Habeas Petition

On January 31, 2020, Scruggs, pro se, filed his Petition for a Writ of Habeas Corpus.

Doc. 1.  He listed the following grounds for relief:

**Ground One**: Petitioner's conviction is contrary to law. And the Eighth Appellate District court made an unreasonable application of law against Amendment Fifth, and Fourteenth of the United States Constitution, where the conviction of rape was against the weight of the evidence.

**Ground Two**: Petitioner's conviction is contrary to law. And the Eighth Appellate District court made an unreasonable application of law against Amendment Fifth, Sixth, and Fourteenth of the United States Constitution, where the conviction of rape was not supported by sufficient evidence.

**Ground Three**: Petitioner's conviction is contrary to law. And the Eighth Appellate District court made an unreasonable application of law against Amendment Fifth, Sixth, and Fourteenth of the United States Constitution, where petitioner due process of law was violated and his equal protection of law, when he was denied effective assistance of counsel, when the trial court erred when it did not have a full colloquy with petitioner.

**Ground Four**: Petitioner's conviction is contrary to law. And the Eighth Appellate District court made an unreasonable application of law against Amendment Fifth, Sixth, and Fourteenth of the United States Constitution, where petitioner due process of law was violated and his equal protection of law, when he was denied effective assistance of counsel, when the trial court erred when it did not have a full plea colloquy with petitioner, pausing to further explain the important rights he was waiving by pleading guilty to sexual battery.

**Ground Five**: Petitioner received ineffective assistance of appellant counsel, violating Amendment Fifth, Sixth, and Fourteenth of the United States Constitution, by not fully reserving Amendment Fifth, Sixth, and Fourteenth of the United States Constitution.

Doc. 1-1, pp. 2-3. On June 5, 2020, Respondent filed a Return of Writ, arguing that Scruggs's grounds for relief are not cognizable, procedurally defaulted, and/or fail on the merits. Doc. 9. Scruggs has not filed a Traverse, and the time to do so has passed.

## II. Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes

confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  Failure to exhaust applies when state remedies are "still available at the time of the federal petition."  *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)).  In contrast, when state court remedies are no longer available, procedural default rather than exhaustion applies.  *Williams*, 460 F.3d at 806.

**Exhaustion.**  A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court.  28 U.S.C. § 2254(b)(1)(A).  A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action.  28 U.S.C. § 2254(b),(c); *Anderson v. Harless*, 459 U.S. 4, 6  (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)) ("Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts").  A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).  In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law.  *See, e.g.*, *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).

**Procedural Default.**  Procedural default may occur in two ways.  *Williams*, 460 F.3d at 806.  First, a petitioner procedurally defaults a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court."  *Id*.  In *Maupin v. Smith*, 785 F.2d

8

135, 138 (6th Cir. 1986), the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *See also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id*. While the exhaustion requirement is technically satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson,* 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review. *Williams,* 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered. *Coleman*, 501 U.S. at 750.

**Merits Review.** In order to obtain habeas relief under 28 U.S.C. § 2254, a petitioner must show either that the state court decision (1) resulted in a decision contrary to, or involving an unreasonable application of, clearly established federal law as determined by the United States Supreme Court ("contrary to" clause); or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings ("unreasonable application" clause). 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant a writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or [based on] a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "Clearly established federal law" refers to the holdings, not dicta, of the Supreme Court's decisions as of the time of the relevant state court decision, as well as legal principles and standards flowing from Supreme Court precedent. *Id.* at 412; *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). A state court is not required to cite Supreme Court precedent or reflect an awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005). If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006); *White v. Woodall*, 572 U.S. 415, 426 (2014) ("Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this

Court's precedent; it does not require state courts to *extend* that precedent or license federal courts to treat the failure to do so as error.") (emphasis in original).

In determining whether the state court's decision involved an unreasonable application of law, the court employs an objective standard. *Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "A state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

**Ineffective Assistance of Counsel.**  The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs ineffective assistance of counsel claims.  A petitioner must show that counsel was objectively unreasonable and a reasonable probability that, but for counsel's unreasonable failure, the result of the proceedings would have been different. *Id.*, at 687-691, 694.  Upon federal habeas review, there is a double layer of deference applied: to counsel, under *Strickland*, and to the state court of appeal's decision on the merits of that claim, under AEDPA. *Kelly v. Lazaroff*, 846 F.3d 819, 832 (6th Cir. 2017) (citing *Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)).  The *Strickland* standard also applies to an ineffective assistance of appellate counsel claim. *Smith v. Robbins*, 528 U.S. 259, 285 (2000).

### III. Analysis

**A. Ground One is not cognizable.**

In Ground One, Scruggs argues that his rape conviction is against the manifest weight of

the evidence. Doc. 1-1, p. 2. Respondent asserts that this claim is not cognizable. Doc. 9, p. 18. The undersigned agrees.

Federal habeas corpus relief is available only to correct federal constitutional violations, 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 US 1, 5 (2010), and a claim that a conviction is against the manifest weight of the evidence rests solely on state law. *See Ross v. Pineda*, 2011 WL 1337102, at *3 (S.D.Ohio April 11, 2011) ("Whether a conviction is against the manifest weight of the evidence is purely a question of Ohio law," citing *State v. Thompkins*, 678 N.E.2d 541 (Ohio 1997)); *Wagner v. Bradley*, 2019 WL 3362013, at *22 (N.D. Ohio May 2, 2019), *report and recommendation adopted*, 2019 WL 2636269 (N.D. Ohio June 27, 2019).

Ground One is not cognizable.

**B. Ground Two fails on the merits**

In Ground Two, Scruggs argues that his rape conviction was not supported by sufficient evidence. Doc. 1-1, p. 2.

In reviewing a claim that a petitioner's conviction was not supported by sufficient evidence, the relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Under this standard, deference is due the trier of fact's determination. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). The standard is not whether the trier of fact made the correct guilt or innocence determination but, rather, whether it made a rational decision to convict or acquit. *Herrera v. Collins*, 506 U.S. 390, 402 (1993). Thus, in making a determination as to sufficiency of the evidence, a court does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." *Brown*, 567 F.3d at 205; *see also Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003); *Thomas v.*

*Stephenson*, 898 F.3d 693, 698 (6th Cir. 2018). "Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt." *Johnson v. Coyle*, 200 F.3d 987, 992 (6th Cir. 2000) (internal quotations and citations omitted); *see also Durr v. Mitchell*, 487 F.3d 423, 449 (6th Cir. 2007) ("circumstantial evidence is entitled to equal weight as direct evidence").

On federal habeas review, an additional layer of deference applies. *Brown*, 567 F.3d at 205; *Coleman v. Johnson*, 566 U.S. 650 (2012). Accordingly, even if this Court were to conclude that a rational trier of fact could not have found petitioner guilty beyond a reasonable doubt, the Court "must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Brown*, 567 F.3d at 205 (emphasis in original); *see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009).

The Ohio Court of Appeals considered this claim as follows:

{¶ 18} Sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Williams*, 8th Dist. Cuyahoga No. 106563, 2018-Ohio-4612, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541. When reviewing the sufficiency of the evidence to support a criminal conviction, an appellate court examines the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *Id*. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Id*., citing *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 19} The jury found Scruggs guilty of rape in violation of R.C. 2907.02(A)(1)(c). This statute provides in pertinent part that "[n]o person shall engage in sexual conduct with another" when "the other person's ability to resist or consent is substantially impaired because of a mental or physical condition," and "the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition."

{¶ 20} Scruggs does not deny that sexual conduct occurred. Rather, he argues that the state failed to offer sufficient evidence either that T.M. was substantially impaired or that he knew, or had reasonable cause to believe, that she was substantially impaired and not able to consent. As a result, we need only address the element of substantial impairment.

{¶ 21} In *State v. McCall*, 8th Dist. Cuyahoga No. 104479, 2017-Ohio-296, we stated:

> As for the element of substantial impairment, this court has repeatedly held that "sleep constitutes a mental or physical condition that substantially impairs a person from resisting or consenting to sexual conduct." *State v. Jones*, 8th Dist. Cuyahoga No. 98151, 2012-Ohio-5737, ¶ 30, citing *State v. Clark*, 8th Dist. Cuyahoga No. 90148, 2008-Ohio-3358, ¶ 21.

*Id*. at ¶ 7.

{¶ 22} In the instant case, T.M. testified that she was twice awakened when someone, whom she thought was Bryant, but actually was Scruggs, had inserted his penis into her vagina. T.M. read the last text message she sent to Bryant, which stated: "That's crazy as f**k. If you wanted to f**k, you could've told me. You ain't have to do it while I was asleep but it's cool."

{¶ 23} The above excerpt reveals that T.M. was substantially impaired by sleep at the time of the incidents such that she was unable to resist or consent to Scruggs's sexual conduct.

{¶ 24} In addition, T.M. testified that she had been drinking for several hours prior to being picked up by Bryant and was already drunk. T.M.II testified that T.M. was drunk when she arrived at her house, but continued to drink. T.M.II also testified that T.M.'s friend and drinking companion, Jamica, was so inebriated that she slept most of time she was at T.M.II's house. The testimony also established that Jamica was asleep most of the time spent at Scruggs's house.

{¶ 25} The consumption of a large amount of alcohol over the course of just a few hours is sufficient evidence to find that the victim was substantially impaired. *State v. Patterson*, 8th Dist. Cuyahoga No. 104266, 2017-Ohio-1444, citing *State v. Kuck*, 2016-Ohio-8512, 79 N.E.3d 1164, ¶ 95 (2d Dist.).

{¶ 26} Based on the foregoing, and the physical evidence linked to Scruggs, we conclude there was sufficient evidence presented which, if believed, would convince the average trier of fact that Scruggs was guilty beyond a reasonable doubt of rape.

{¶ 27} Accordingly, the second assignment of error is overruled.

*Scruggs*, 2019 WL 3410059, at *3-4.

Scruggs asserts that the Ohio Court of Appeals "misapplied the law when using … sufficiency of the evidence to affirm the conviction."  Doc. 1-1, p. 7.  The undersigned disagrees; the Ohio Court of Appeals applied the correct standard when considering Scruggs' challenge to the sufficiency of the evidence: "whether, after viewing the evidence in a light most favorable to

the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Scruggs*, 2019 WL 3410059, at *3; *Jackson*, 443 U.S. at 319 (the relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."). The Ohio Court of Appeals considered the evidence and concluded that the average trier of fact could find that Scruggs was guilty beyond a reasonable doubt of the essential elements of rape. *Scruggs*, 2019 WL 3410059, at *4. Thus, the Ohio Court of Appeals did not misapply the law when concluding that Scruggs's sufficiency of the evidence claim failed.

Next, Scruggs argues that the state failed to offer sufficient evidence that the victim was impaired or that he knew she was impaired. Doc. 1-1, pp. 8-10. In support of his assertion that the victim was not impaired, he points out that the victim initially stated that she believed that another person had raped her. Doc. 1-1, pp. 10-11. However, the fact that the victim had initially misidentified the person who raped her only serves to bolster her testimony that she was impaired. Evidence was presented that she was asleep at the time of the rape and had been drinking and, as a result, she did not know who had raped her. The fact that the jury did not believe Scruggs's testimony does not undermine the overwhelming evidence presented at trial that the jury did believe; namely, the victim's testimony. *See Tucker v. Palmer*, 541 F.3d 652, 658-659 (6th Cir. 2008) ("[T]he testimony of the victim alone is constitutionally sufficient to sustain a conviction.").

Finally, Scruggs's assertion that the state did not prove the element of force or threat of force (Doc. 1-1, p. 11) fails. The state was not required to prove that element because the state proved that the victim was impaired. *See, e.g., State v. Rucker*, 2020-Ohio-2715, ¶ 17, -- N.E.3d --, 2020 WL 2079211, at *4 (Oh. Ct. App., 8th Dist., April 30, 2020) (explaining the different

elements of forcible rape under R.C. 2907.02(A)(2) and substantial impairment rape under R.C. 2907.02(A)(1)(c), the latter of which does not have a "force" element).

The Ohio Court of Appeals' determination was not unreasonable; Ground Two fails on the merits. *See Brown*, 567 F.3d at 205.

### C. Ground Three fails on the merits

In Ground Three, Scruggs argues that he was denied the effective assistance of counsel when the trial court did not have a full colloquy with him. Doc. 1-1, p. 3. This is the same claim Scruggs raises in Ground Four; to that extent, the undersigned considers this claim in the discussion regarding Ground Four, *infra*.

Construing his Petition liberally, the undersigned considers the claim Scruggs possibly meant to assert in Ground Three: that trial counsel was ineffective for failing to call witnesses to further test the victim's testimony that she was impaired. See Doc. 1-1, p. 18 (Scruggs's brief in support of his Petition asserting that trial counsel was ineffective for failing to call "alibi witnesses that the victim was coherent or not coherent[.]"); Doc. 9-1, pp. 60-61 (Scruggs's brief on appeal to the Ohio Court of Appeals arguing that trial counsel was ineffective for failing to call witnesses to test the victim's recitation of events); Doc. 9-1, p. 98 (brief in support of jurisdiction to the Ohio Supreme Court asserting that trial counsel was ineffective for failing to call witnesses to testify on his behalf). The Ohio Court of Appeals considered that claim and rejected it, explaining,

> {¶ 35} In the third assignment of error, Scruggs argues he was denied the effective assistance of counsel because of counsel's failure to subpoena and call various witnesses to testify on his behalf.

> {¶ 36} For a defendant to establish a claim for ineffective assistance of counsel, he or she must demonstrate that trial counsel's performance was deficient and that the deficient performance prejudiced his or her defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). To establish prejudice, the defendant must demonstrate there is a "reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland* at 694.

{¶ 37} In evaluating a claim of ineffective assistance of counsel, a court must give great deference to counsel's performance. *Id*. at 689. "A reviewing court will strongly presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *State v. Pawlak*, 8th Dist. Cuyahoga No. 99555, 2014-Ohio-2175, ¶ 69. Thus, "[t]rial strategy or tactical decisions cannot form the basis for a claim of ineffective counsel." *State v. Logan*, 8th Dist. Cuyahoga No. 106868, 2018-Ohio-5350, citing *State v. Foster*, 8th Dist. Cuyahoga No. 93391, 2010-Ohio-3186, ¶ 23, citing *State v. Clayton*, 62 Ohio St.2d 45, 402 N.E.2d 1189 (1980).

{¶ 38} Scruggs argues defense counsel was ineffective for failing to call Bryant as a witness, who could have testified that T.M. was coherent, was able to carry on a full conversation, and most importantly was able to consent to sexual intercourse. Scruggs also argues that defense counsel was ineffective for failing to call Jamica as a witness, who could have testified whether T.M. was looking for a sexual relationship when she contacted Bryant and could also testify whether T.M. was in a position to consent.

{¶ 39} Generally, an attorney's determination of which witnesses to call falls within the realm of trial strategy and will not be second-guessed on appeal. *State v. White*, 8th Dist. Cuyahoga No. 101576, 2017-Ohio-7169, citing *State v. Treesh*, 90 Ohio St.3d 460, 490, 2001-Ohio-4, 739 N.E.2d 749; *State v. Vargas*, 8th Dist. Cuyahoga No. 97376, 2012-Ohio-2767, ¶ 14. Thus, the mere failure to call witnesses does not render counsel's assistance ineffective absent a showing of prejudice.

{¶ 40} Here, defense counsel's decision not to call Bryant and Jamica as witnesses falls within the realm of trial strategy. We also find there is no showing of prejudice by defense counsel's decision. Scruggs's own testimony established that Bryant was not present when the sexual conduct occurred. Further, by Scruggs's own testimony, Jamica was asleep when the sexual conduct occurred.

{¶ 41} As a result, Scruggs was not prejudiced and therefore, his claim of ineffective assistance of counsel is unpersuasive.

*Scruggs*, 2019 WL 3410059, at *5.

Scruggs does not state how he believes the Ohio Court of Appeals committed a

constitutional error when considering his claim.  He does not quibble with the Ohio Court of

Appeals' factual finding that his own testimony established that neither Bryant nor Jamica could

have offered testimony to support his.  Nor can he, as his testimony at trial does indeed establish

that Bryant was not present and Jamica was asleep when the sexual conduct occurred.  See Doc.

9-4, pp. 2-11.  The Ohio Court of Appeals decision was not unreasonable; Ground Three fails on the merits.

### D. A portion of Ground Four is procedurally defaulted and a portion fails on the merits

In Ground Four, Scruggs argues that trial counsel was ineffective "when the trial court erred when it did not have a full plea colloquy with petitioner, pausing to further explain the important rights he was waiving by pleading guilty to sexual battery."  Doc. 1-1, p. 3.  He provides no argument related to this claim.

To the extent Scruggs asserts that trial counsel was ineffective for failing to object during the trial court's purportedly incomplete plea colloquy, any such claim is procedurally defaulted because Scruggs failed to raise such a claim at all levels on direct appeal.  On appeal to the Ohio Court of Appeals, Scruggs argued that the trial court erred by not providing him a full plea colloquy (Doc. 9-1, p. 45); he did not allege trial counsel was ineffective in relation to this claim. Although he raised such a claim in his discretionary appeal to the Ohio Supreme Court (Doc. 9-1, p. 109), doing so did not "fairly present" this claim.  *Castille v. Peoples*, 489 U.S. 346, 349-351 (1989) (raising a claim for the first time to the highest state court on discretionary review is not "fair presentation" for exhausting a federal habeas claim); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim."); *Casey v. Moore*, 286 F.3d 896, 916-918 (9th Cir. 2004) (same, collecting cases); *see also Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D.Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition.").  Thus, Scruggs failed to fairly present this claim and it is unexhausted; because he may no longer present this

claim, it is procedurally defaulted. *See Williams*, 460 F.3d at 806 ("Where state court remedies are no longer available to a petitioner because he or she failed to use them within the required time period, procedural default and not exhaustion bars federal court review.").

Scruggs does not allege cause for his failure to present this claim to the Ohio courts at all levels. Ineffective assistance of appellate counsel cannot constitute cause because, as explained below in the discussion of Ground Five, Scruggs procedurally defaulted the arguments raised in his Rule 26(B) Application because he failed to appeal the Ohio Court of Appeals' denial of his Rule 26(B) Application to the Ohio Supreme Court. *Edwards v. Carpenter*, 529 U.S. 446, 451-452 (2000) (when a petitioner procedurally defaults an ineffective assistance of counsel claim, ineffective assistance of counsel cannot serve as cause to excuse the procedural default of the underlying claim unless the petitioner can show cause and prejudice to excuse the ineffective assistance of counsel procedural default). Scruggs does not allege prejudice. And he has not shown that his is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

To the extent Scruggs alleges in Ground 4 that the trial court erred when it did not have a full plea colloquy with petitioner, pausing to further explain the important rights he was waiving by pleading guilty to sexual battery, such a claim fails on the merits. The Ohio Court of Appeals considered this claim:

> {¶ 43} In the fourth assignment of error, Scruggs argues the trial court erred when it failed to have a full plea colloquy on the sexual battery charges. We find no merit to this assertion.
>
> {¶ 44} Crim.R. 11(C)(2)(a) provides in pertinent part that "the court shall not accept a plea of guilty or no contest without first addressing the defendant personally and * * * [d]etermining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved[.]"
>
> {¶ 45} The requirements of Crim.R. 11(C)(2)(a) are nonconstitutional, and thus, this court reviews "to ensure substantial compliance" with this rule. *State v. Maddox*, 8th

Dist. Cuyahoga Nos. 106505 and 106506, 2018-Ohio-3056, citing *State v. Esner*, 8th
Dist. Cuyahoga No. 90740, 2008-Ohio-6654. "Under this standard, a slight deviation
from the text of the rule is permissible; so long as the totality of the circumstances
indicates that 'the defendant subjectively understands the implications of his plea and the
rights he is waiving.'" *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d
462, ¶ 31, quoting *State v. Nero*, 56 Ohio St.3d 106, 564 N.E.2d 474 (1990).

{¶ 46} Scruggs does not contend that the trial court failed to engage in a proper Crim.R.
11 colloquy. Instead, Scruggs claims the trial court should have been more detailed.

{¶ 47} In the instant case, prior to accepting Scruggs's pleas, the trial court asked if he
was threatened or coerced and his response was no; asked if he was promised anything to
enter the pleas and his response was no; asked if he understood the allegations and his
response was yes; and when asked if he understood a plea of guilt is a complete
admission, his response was yes.

{¶ 48} In addition, the trial court carefully reviewed the offense to which Scruggs would
be pleading guilty, identifying the potential sentence he could receive. Scruggs confirmed
that he understood. The trial court specifically asked if Scruggs understood that the pleas
could not be accepted if he did not understand that he would be waiving important
constitutional rights. The trial court then proceeded to review all the constitutional rights
that Scruggs would be waiving by entering the pleas. In each instance, Scruggs indicated
he understood.

{¶ 49} Following a thorough review of the record, we find that, under the totality of the
circumstances, Scruggs subjectively understood the consequences and implications of his
guilty pleas. As a result, his guilty pleas were knowingly, intelligently, and voluntarily
made and the trial court did not err in accepting his guilty pleas.

{¶ 50} Accordingly, the fourth assignment of error is overruled.

*Scruggs*, 2019 WL 3410059, at *6-7.  Scruggs provides no explanation regarding how he

believes the trial court committed a constitutional error by not "pausing to further explain the

important rights he was waiving by pleading guilty to sexual battery."  It cannot be said that the

Ohio Court of Appeals' decision "was so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for fair-minded

disagreement."  *Harrington*, 562 U.S. at 103.

In sum, a portion of Ground Four is procedurally defaulted and a potion fails on the

merits.

**E. Ground Five is procedurally defaulted**

In Ground Five, Scruggs argues that he received ineffective assistance of appellant counsel for "not fully reserving Amendment Fifth, Sixth, and Fourteenth of the United States Constitution."  Doc. 1-1, p. 3.  This claim is procedurally defaulted.  Liberally construing Scruggs's court filings, Scruggs included a similar claim in his Rule 26(B) Application to Reopen (Doc. 9-1, p. 132), but the Ohio Court of Appeals denied his application and Scruggs did not appeal to the Ohio Supreme Court.  Therefore, he procedurally defaulted this claim by failing to present it to all state levels on appeal.  *See Baldwin*, 541 U.S. at 29; *Williams*, 460 F.3d at 806.  As above, he has not alleged cause or prejudice to excuse his procedural default or demonstrated actual innocence.  Ground Five is procedurally defaulted.

<h3 style="text-align:center">IV. Conclusion and Recommendation</h3>

For the reasons stated above, the undersigned recommends that Scruggs's habeas Petition be **DISMISSED in part and DENIED in part**.

Dated: October 14, 2020

*/s/Kathleen B. Burke*
_____
Kathleen B. Burke
United States Magistrate Judge

<h3 style="text-align:center"><u>OBJECTIONS</u></h3>

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).